William R. WRIGHT, Appellant,

v.

James H. FOWLER, M.D., Appellee.

No. 2–98–070–CV.

Court of Appeals of Texas,
Fort Worth.

April 8, 1999.

---

Ravkind & Littlepage, P.C., Sidney Ravkind, Zoe B. Littlepage, Chetna Gosain, Houston, for Appellant.

Cowles & Thompson, P.C., Julia F. Pendery, Charles T. Frazier, Jr., Betsy A. Leveno, Dallas, for Appellee.

Panel A: CAYCE, C.J.; LIVINGSTON and BRIGHAM, JJ.

## OPINION

WILLIAM BRIGHAM, Justice.

This is an appeal from a summary judgment against Appellant, William R. Wright, in favor of Appellee, James H. Fowler, M.D. in a malpractice suit arising out of elective cosmetic surgery and procedures. Because the record establishes that Appellee conclusively proved Appellant's medical negligence action was barred by the statute of limitations, and Appellant failed to plead a Deceptive Trade Practices (DTPA) cause of action that is not barred by the Medical Liability and Insurance Improvement Act (MLIIA), we affirm.

### FACTS

On December 4, 1989, Appellee placed silicone cheek implants in Appellant's face. Before surgery, Appellant signed a surgical consent form that listed allergic reactions, infection, failure to achieve satisfactory cosmetic results, and numbness of cheek among the possible risks. On February 26, April 19, and June 7, 1990, Appellee injected liquid silicone drops into several sites on Appellant's face. On June 7, 1990, Appellant complained of pain and discomfort in his right upper cheek. On July 12, 1990, Appellee surgically repositioned one of the implants. Before that surgery, Appellant signed a similar consent form. Several months after the second surgery, Appellant requested his medical records from Appellee because Appellant "knew [he would] never return to see [Appellee] again," and was afraid Appellee wouldn't keep them.

In 1993 or early 1994, Appellant saw an allergist because he was experiencing tiredness and malaise. He was treated for

allergic rhinitis with allergy shots and anti-histamines on a regular basis for approximately two years.

On April 5, 1994, Appellant engaged another plastic surgeon, Dr. Steve Byrd, to remove the implants because his face had started hurting again. In June 1994, Appellant took a "rubbery" substance from his nose to his allergist for inspection. He told his allergist that Appellee had injected him with silicone, and asked whether the allergist thought it necessary to know what kind of silicone it was. The allergist advised Appellant that Dow Corning made all the injectable silicone.

In June 1994, Appellant sent a certified letter to Appellee discussing his concern about his health[1] and recent articles concerning silicone, and advising Appellee that the physician who removed his implants shared his "concern for possible future systemic problems." Appellant also requested that Appellee identify the specific type of silicone he had injected into Appellant's face. Appellee responded by letter in July 1994, informing Appellant that the silicone used was "medical grade silicone" manufactured by Dow Corning, and stating the volume of silicone injected into each site. Appellee's response also included a package insert on Dow Corning "360 medical fluid."

Appellant was examined on July 15, 1994 by a staff doctor at the University of South Florida Medical School, and was told by Dr. Frank Vasey that he should exercise and take certain medications for his symptoms of fatigue. The clinical record from the visit reflects an assessment of silicone-related disorder. Some time after that, Appellant was treated for a sinus infection and he later had one visit with a rheumatologist.

1. He advised that "[m]y health is compromised at this time.... This condition has intensified since my surgery in which Dr. Steve Byrd removed my cheek implants."

2. The other defendants were several Dow Corning corporations, as manufacturer of the liquid silicone, McGhan Medical Corporation

## PROCEDURAL HISTORY

In his original petition, filed on October 24, 1994, Appellant sued Appellee and several other defendants,[2] complaining of defective implants and silicone fluid, and invoking the doctrines of strict liability, breach of warranty, and negligence. On December 15, 1995, Appellant non-suited all defendants except Appellee, his professional association, and McGhan.[3]

On September 26, 1997, Appellee and his professional association moved for summary judgment on all causes of action, and the court set a hearing on the motion for October 17, 1997. On October 7, 1997, Appellant filed his first amended original petition, adding allegations that Appellee's actions "further constitute medical malpractice and violations of the Deceptive Trade Practices Act...." Appellant's response to Appellees' motion for summary judgment was filed on October 9, 1997.

The following exhibits were attached to or referenced by Appellant's response. The entire deposition of Appellant was attached as Exhibit A; the deposition of Appellee in a different cause of action brought by a different plaintiff against Appellee was attached as Exhibit B. There was no exhibit C attached, but Appellant's response stated that "the deposition of [Appellee] in this case is scheduled for October 16, 1997, after delays request[ed] by the defendant[;][i]t will be attached as Exhibit C." Exhibit D consisted of medical records from Dr. Byrd. Exhibit E included Appellant's medical records from the University of South Florida College of Medicine. Exhibit F was a copy of 1976 correspondence concerning the FDA's rejection of Dow Corning's application for approval

(McGhan), as manufacturer of the cheek implants, and James H. Fowler, M.D., P.A. d/b/a Cosmetic Surgery Center of North Dallas, Appellee's professional association.

3. The court signed an order of dismissal as to defendant McGhan on November 14, 1997.

of the silicone fluid. Attached as Exhibits G and H were epidemiologic studies on silicone injections and implants. Finally, Exhibit I consisted of Appellant's medical records from Dr. James Denton.[4]

In his response, Appellant referenced an affidavit of Dr. John Barnett for the proposition that Appellee's conduct fell below the standard of care. No affidavit of Dr. Barnett was attached. Appellant's response alleged that he suffered not only a systemic injury, but also a local injury.[5] He further alleged that he "began suffering local and systemic problems in the latter part of 1993;"[6] that he "most likely ... discovered" that his cheek implants were silicone in 1994;[7] and that suit was filed "well within the ... discovery rule."

By supplemental response dated October 10, 1997, Appellant filed a deposition of Dr. Barnett, which was taken in a different cause of action out of district court in Dallas County styled *Lori Murphy v. James H. Fowler.* Appellant faxed excerpts of the deposition of Dr. Barnett to Appellee on October 10, 1997, and stated in a transmittal letter that Appellant was "attempting to obtain an Affidavit from Dr. John Barnett [but that] due to his inavailability, [sic] [Appellant] ha[s] been unable to obtain that affidavit timely." On October 15, 1997, Appellant filed the affidavit, which states that in Dr. Barnett's opinion, the facial injections of silicone liquid performed by Appellee constituted

negligence and fell outside the bounds of accepted standard medical care. On October 14, 1997, Appellant faxed the affidavit to Appellee.

On October . 17, 1997, the trial court granted "partial summary judgment on all grounds stated" in Appellee's motion for summary judgment. An order to that effect was signed on October 24, 1997.

On November 7, 1997, Appellee and his professional association filed their first amended answer and a second motion for summary judgment, and as grounds, contended in part that summary judgment had been granted in favor of Appellee as to all but Appellant's DTPA claim; that the DTPA claims were nothing more than an attempt to recast Appellant's medical negligence claims which have already been dismissed and are thus barred under the MLIIA; that Appellant's claims regarding Appellee's alleged misrepresentations failed to satisfy the Statute of Frauds; and that Appellant's claims were barred by the applicable statute of limitations, despite the characterization of the claims as a DTPA action.

Appellant filed a response to the second motion for summary judgment on December 5, 1997, along with the deposition of Appellant taken in this case on October 17, 1997 attached as an exhibit.[8] On February 19, 1998, the trial court granted final summary judgment in favor of Appellee and his professional association, "disposing of

4. Appellant originally engaged Dr. Denton to remove his implants, but on the day of surgery, Dr. Denton canceled surgery because he "felt awkward dealing with [Appellant] on several levels and felt it would be best for the patient and me to cancel the surgery."

5. Appellant describes his local injuries to include: the local injury from the injections; the migration of the silicone; the mental anguish associated with not knowing what materials were injected into his face; the local injury from surgical implantation; the degradation of the implants; the explantation and subsequent facial scarring and deformity; asymmetry in the density between his right and left sinus region; inflammation; pain; and swelling.

6. This assertion appears on page 2 of his response. On the last page of his response, however, Appellant asserts that he "first experienced local and systemic problems ... in February 1994."

7. Appellant testified in his deposition that he knew the liquid substance was silicone before Appellee injected it into his face.

8. Appellant also incorporated by reference his response to Appellee's first motion for summary judgment, and the attachments to that response, the deposition of Dr. Barnett from *Murphy v. Fowler,* and the affidavit of Dr. Barnett.

all of [Appellant's] causes of action against [Appellee]," and signed the order on February 27, 1998. On March 13, 1998, Appellant filed notice of appeal.[9]

In oral argument, Appellant conceded that summary judgment was proper on his systemic injury claim, and asserted only that summary judgment on the local injury claim was error.

## STANDARD OF REVIEW

■ After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. *See* TEX.R. CIV. P. 166a(i) (Vernon Supp.1998). The motion must specifically state the elements for which there is no evidence. *See id.* The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See id.* The nonmovant may raise a genuine issue of material fact by showing that a reasonable jury could return a verdict in the nonmovant's favor. *Cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986) (interpreting FED.R.CIV.P. 56); *see also* TEX.R. CIV. P. 166a(i) cmt (stating that the response "need only point out evidence that raises a fact issue on the challenged elements").

■ A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *See Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex.1996). To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex.1996). When the basis for summary judgment is the statute of limitations, the movant has the burden to show from the record that suit is barred by limitations. *See Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983).

The burden of proof is on the movant; we resolve all doubts against the movant, and view the evidence and its reasonable inferences in a light most favorable to the nonmovant. *See Friendswood Dev. Co.*, 926 S.W.2d at 282; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

■ When reviewing a summary judgment granted on general grounds, the appeals court considers whether any theories set forth in the motion will support summary judgment. *See Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995). When the trial court's judgment rests upon more than one independent ground or defense, the aggrieved party must assign error to each ground, or the judgment will be affirmed on the ground to which no complaint is made. *See Bailey v. Rogers*, 631 S.W.2d 784, 786 (Tex.App.—Austin 1982, no writ); *Hudson v. Buddie's Super Markets, Inc.*, 488 S.W.2d 143, 147–48 (Tex.Civ.App.—Fort Worth 1972, no writ). To assign error to a ground supporting the motion for summary judgment, the nonmovant must present the ground to the trial court in opposition. *See* TEX.R. CIV. P. 166a(c); *State Bd. of Ins. v. Westland Film Indus.*, 705 S.W.2d 695, 696 (Tex.1986).

Because Appellant affirmatively waived his appeal of summary judgment on the causes of action for the systemic injury, we will address the points only as they relate to the local injury claim, by addressing the points applicable to each cause of action.

## MEDICAL MALPRACTICE

■ The first motion for summary judgment addressed Appellant's cause of action for medical malpractice. Specifically, the

---

9. Appellee's professional association was not listed as an Appellee on Appellant's notice of appeal. Therefore, the professional association is not a party to this appeal.

motion was based on the following relevant grounds: (1) Appellant's health care liability claim is barred by the two-year statute of limitations under article 4590i of the MLIIA; (2) there is no evidence of an injury; (3) there is no evidence of general causation; and (4) there is no evidence of proximate cause and breach of the applicable standard of care. If any of these theories support summary judgment on the medical malpractice claim, we must affirm summary judgment as to Appellant's cause of action for medical malpractice. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995).

### LIMITATIONS

■ ■ Before the MLIIA became effective, the discovery rule tolled the applicable statute of limitations until the patient discovered, or should have discovered, the alleged malpractice. *See Gaddis v. Smith*, 417 S.W.2d 577, 580 (Tex.1967). The MLIIA provides:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed. . . .

TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01 (Vernon Supp.1999). Section 10.01 is the exclusive statute of limitations for medical malpractice claims. *See Shepherd v. Ledford*, 962 S.W.2d 28, 31 (Tex.1998). The act created an absolute two-year limitations period, abolishing the discovery rule in health care liability claims. *See Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985).

■ ■ The limitations period is measured from one of three dates: (1) the date of the tort; (2) the last date of the relevant course of treatment; or (3) the last date of the relevant hospitalization.[10] *See Husain v. Khatib*, 964 S.W.2d 918, 919 (Tex.1998). The parties may not simply choose the most favorable of these dates. *See id.* When the precise date of the specific breach or tort is ascertainable from the facts of the case, the limitations period begins to run from that date. *See Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex. 1987).

Our inquiry must focus on the correct date from which to measure the limitations period for a cause of action for medical malpractice premised upon alleged misrepresentations that the silicone implants and injections were safe: (1) the date of the tort;[11] or (2) the last date of the relevant course of treatment. Appellant contends that his local injuries developed in late 1993, when he was informed by a physician that his cheek implants were asymmetric and were causing asymmetry in the density between his right and left sinus region, and that he started feeling "severe pain from the implants and underwent surgery by Dr. Denton in April of 1994 to remove both cheek implants." He further contends that because his local injuries arose in late 1993, his suit, which was filed on October 24, 1994, is not barred. In effect, Appellant argues that because he did not discover his local injury until late 1993, and because the date of his last treatment for the local injury was in 1994 when the implants were removed by a different doctor, the statute of limitations did not begin to run until the date they were removed. This would seem to trigger the second provision of section 10.01; namely, the course of treatment doctrine.

---

**10.** The third provision is not applicable here because the claim is not based on a hospitalization.

**11.** The date of the alleged misrepresentation that the implants were safe is unclear from the record. It could have been as early as

Appellant's first contact with Appellee on November 17, 1989, but no later than the date of the implantation on December 4, 1989. The date of the alleged misrepresentation that the injections were safe could be no later than the date of the last injection on June 7, 1990.

■ The course of treatment doctrine was intended to aid a plaintiff who had difficulty ascertaining a precise date on which his injury occurred, specifically in circumstances in which the claim arose from a course of treatment that extended for a period of time. *See Husain,* 964 S.W.2d at 919. But when, as here, the precise date of the specific breach or tort is ascertainable, the MLIIA requires that the limitation period run from the date of the breach or tort. *See id.* This is a medical malpractice action premised upon alleged mis-representations. Appellee could not have made representations as to the safety of the implants later than December 4, 1989, or as to the safety of the injections later than June 7, 1990.[12] Appellant's suit, which was not filed until October 24, 1994, is therefore barred by the two-year statute of limitations. Appellee met his burden to show from the record when limitations commenced by referring to Appellant's pleadings, which set forth the dates of each medical procedure. Because this theory supports summary judgment on the medical malpractice claim, we affirm summary judgment as to Appellant's cause of action for medical malpractice. We overrule Appellant's fifth point. It is not necessary to consider the other grounds for summary judgment as to the medical malpractice action, to which Appellant's points one through four are directed.

## THE OPEN COURTS DOCTRINE

■ We next address Appellant's assertion that he did not discover his local injury until late 1993, approximately three years after the last injection. Appellant is attempting to challenge a strict application of the statute of limitations in his case on the grounds that it was impossible for him to know of his injury until after limitations expired. To challenge the constitutionality of article 4590i, Appellant must allege that,

under the open courts provision of the Texas Constitution, the article is unconstitutional as applied to him because it cut off his cause of action before he knew or should have known it existed. *See* Tex. Const. art. I § 13; *Hellman v. Mateo,* 772 S.W.2d 64, 66 (Tex.1989). Appellant's assertion of reliance on the discovery rule in his response to the motion for summary judgment was sufficient to raise the issue of the unconstitutionality of article 4590i. *See Smith v. Costello,* 861 S.W.2d 56, 57–58 (Tex.App.—Fort Worth 1993, writ dism'd by agr.).

■ Article I, section 13 of the Texas Constitution guarantees that all persons bringing common law causes of action will not unreasonably be denied access to the courts. See TEX. CONST. art. I, § 13; *Trinity River Authority v. URS Consultants, Inc.,* 889 S.W.2d 259, 261 (Tex.1994). To establish a right of action under the open courts provision, a litigant must show that he has a cognizable common-law cause of action, and that restriction of the claim is unreasonable or arbitrary when balanced against the state's purpose. *See Diaz v. Westphal,* 941 S.W.2d 96, 100 (Tex.1997). The two-year statute of limitations of article 4590i is unconstitutional to the extent it cuts off a cause of action before the litigant knew or should have known the nature of the injury or the facts giving rise to the cause of action. *See Hellman,* 772 S.W.2d at 66. But if Appellant had a reasonable opportunity to discover the wrong and bring suit within the statutory period, the open courts provision does not apply and the lawsuit is time-barred. *See Jennings v. Burgess,* 917 S.W.2d 790, 793 (Tex.1996).

■ The uncontroverted summary judgment evidence of Appellant demonstrates that he experienced problems shortly after the procedures were per-

---

**12.** To the extent Appellant's argument encompasses an allegation that Appellee negligently misrepresented the safety of the silicone injections as late as July 1994, when he responded to Appellant's request for the specific type of silicone injected, we reject it in light of the reliance element.

formed by Appellee.[13] Furthermore, Appellant requested his records from Appellee "months" after the last follow-up exam by Appellee in July 1990, because he knew he would never go back and he didn't think he could rely on Appellee to keep them. This evidence belies any contention that the limitations period of the MLIIA cut off Appellant's cause of action before he knew or should have known the nature of the injury or the facts giving rise to the cause of action. *See Hellman,* 772 S.W.2d at 66. For these reasons, we reject Appellant's challenge to the constitutionality of the statute as applied to him.

## STRICT LIABILITY AND BREACH OF WARRANTY

Appellant did not assign error to any ground for summary judgment on the strict liability case or the beach of warranty case. Therefore, we affirm summary judgment on both causes of action. *See Bailey,* 631 S.W.2d at 786.

## DECEPTIVE TRADE PRACTICES ACT

Appellee's second motion for summary judgment addressed Appellant's cause of action under the DTPA, and was filed under Rules 166a(i) and (b). Appellant's amended petition alleged that Appellee represented the silicone materials had characteristics they did not have, and Appellee falsely represented the established safety of the products.

■ Thus we must decide whether the MLIIA bars Appellant's DTPA claim. The Texas Supreme Court has held that DTPA claims based on negligence are barred by section 12.01, which provides:

Notwithstanding any other law, no provisions of Sections 17.41–17.63, Business and Commerce Code [the DTPA], shall apply to physicians or health care providers as defined in Section 1.03(3) of this Act, with respect to claims for damages for personal injury or death resulting, or alleged to have resulted, from negligence on the part of any physician or health care provider.

TEX.REV.CIV. STAT. ANN. art. 4590i, § 12.01(a) (Vernon Supp.1999); *see Sorokolit v. Rhodes,* 889 S.W.2d 239, 242 (Tex. 1994). But if the DTPA claim is not based on a breach of the accepted standard of medical care, section 12.01(a) does not preclude suit for violation of the DTPA. *See Sorokolit, 889 S.W.2d at 242.*

■ A plaintiff cannot recast a health care liability claim in the language of another cause of action to avoid the strict two-year statute of limitations found in article 4590i. *See MacGregor Medical Ass'n v. Campbell,* 985 S.W.2d 38, 39–40, (Tex. 1998); *Gormley v. Stover,* 907 S.W.2d 448, 450 (Tex.1995); *Walden v. Jeffery,* 907 S.W.2d 446, 448 (Tex.1995); *Sorokolit,* 889 S.W.2d at 242. To determine whether a plaintiff has tried to do so, we must examine the underlying nature of the cause of action. *See Sorokolit,* 889 S.W.2d at 242. If the cause of action is based on the physician's breach of the accepted standard of medical care, the cause of action is nothing more than a health care liability claim, regardless of how the plaintiff labels it. *See Gormley,* 907 S.W.2d at 450; *Sorokolit,* 889 S.W.2d at 242. We next examine the underlying nature of Appellant's cause of action.

Appellant's original petition, filed October 24, 1994, alleged three causes of action: strict liability, breach of warranty, and negligence. After Appellee filed his first motion for summary judgment in part on grounds that Appellant's claim was a health care liability claim and subject to the strict two-year statute of limitations, Appellant filed an amended petition on October 27, 1997, adding the following sen-

---

**13.** Appellant complained to Appellee of discomfort and possible shifting of the right cheek implant on June 7, 1990, and Appellee performed a second surgery on July 12, 1990, to reposition the implant. On July 26, 1990, Appellant again consulted Appellee, voicing concern about tingling along his lower cheek area and weakness of expression. In his deposition, Appellant testified that after the repositioning, the right implant was always asymmetrical. He also testified that several weeks after the first surgery, he complained to a general practitioner in his building that one of his implants was "mobile."

tence: "Defendant's actions further constitute medical malpractice and violations of the Deceptive Trade Practices Act in that he represented that the silicone materials had characteristics it [sic] did not have, and he falsely represented the established safety of the product." [14] That Appellant waited three years after filing his negligence suit to allege a DTPA claim, only days after Appellee filed a motion for summary judgment alleging suit was barred by limitations, is some indication that he has attempted to relabel the claim in anticipation that the trial court might enter a summary judgment on the negligence claim.

As the factual basis for his alleged DTPA cause of action, Appellant repeated all of his previous allegations of negligence, adding a sentence that recharacterized these actions as violations of the DTPA. But Appellant did not specifically plead an intentional or knowing violation or seek treble damages.

■ Rule 47 requires that a pleading contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." TEX.R. CIV. P. 47(a) (Vernon 1979). Fair notice means that pleadings must be "specific enough that an opposing attorney, of reasonable competence, with the pleadings before him, can ascertain the nature and basic issues of the controversy and the testimony probably relevant." *See Sage v. Wong,* 720 S.W.2d 882, 884 (Tex.App.—Fort Worth 1986, writ ref'd, n.r.e.). This test includes whether each element of a cause of action has been alleged. *See id.* A pleading is not sufficient if it fails to allege all the elements of a cause of action. *See id.*

■ Generally, neither section 17.46(b)(5) or (b)(7) require proof of intent

or knowledge before the sanctions of the DTPA are imposed. *See Smith v. Baldwin,* 611 S.W.2d 611, 616–17 (Tex.1980); Pennington v. Singleton, 606 S.W.2d 682, 689–90 (Tex.1980). But, because Appellant alleges a DTPA cause of action based on misrepresentations by his physician, and the MLIIA prohibits DTPA actions based on negligence, an essential element of Appellant's cause of action is that the alleged misrepresentations were made intentionally or knowingly. Furthermore, the DTPA's provision for treble damages applies only when the "trier of fact finds that the conduct of the defendant was committed knowingly ... or intentionally." TEX. BUS. & COM.CODE ANN. § 17.50(b)(1). Because Appellant did not plead treble damages, he cannot argue that a reasonably competent attorney was on fair notice of the nature of the controversy: namely, that his suit was *not* a DTPA action against a physician grounded in negligence. We hold that Appellant merely recast his health care liability claim as a DTPA claim to avoid article 4590i's two-year statute of limitations.

Because Appellant did not plead a DTPA action that is not barred by the MLIIA, and because he merely recast his health care liability claim as a DTPA claim to avoid limitations, we hold that the court's general grant of summary judgment was not error, and we overrule point six.[15]

## CONCLUSION

For the foregoing reasons, we affirm the trial court's grant of summary judgment.

---

14. These allegations implicate sections 17.46(b)(5) and (b)(7). *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(5), (b)(7) (Vernon Supp. 1999). Section 17.46(b)(5) makes it a deceptive trade practice to represent that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have. *See* id. § 17.46(b)(5). Section 17.46(b)(7) makes it a deceptive trade

practice to represent that goods or services are of a particular standard, quality, or grade, if they are of another. *See* id. § 17.46(b)(7).

15. Therefore, it is not necessary to address point seven, alleging the trial court erred in holding the DTPA claims were barred by the statute of frauds.