ENGEL V. BUNN-O-MATIC

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-064-CV

WHITNEY ENGEL APPELLANT

V.

BUNN-O-MATIC CORPORATION APPELLEE

------------

FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In one point, appellant Whitney Engel appeals from the trial court’s grant of summary judgment in favor of appellee Bunn-O-Matic Corporation.  We affirm.

II.  Background Facts

In her petition, appellant claimed that on August 6, 2000, while she was working as a waitress at the Denny’s Classic Diner on North Cooper in Arlington, Texas, she received an electrical shock while cleaning the restaurant’s model OT-35 coffee maker.  Appellee manufactured the coffee maker.  Appellant alleges that as a result of the electrical shock, she fell to the floor, was knocked unconscious, and suffered injuries to her head, back, neck, shoulders, and arms.  Appellant filed claims against appellee for design, manufacturing, operating, and marketing defects of the coffee maker.

On August 5, 2004, appellee filed a traditional and a no-evidence motion for summary judgment on the ground that appellant had presented no evidence of causation.  On September 15, appellee filed a supplement to its motions for summary judgment, along with supplemental evidence,
(footnote: 2) asserting that there was no medical evidence in support of appellant’s allegations that she received an electrical shock from the coffee maker.  On September 22, appellee filed additional supplemental evidence in support of its motions for summary judgment, which contained drawings of the coffee maker and its parts.

On October 28, appellant filed a reply and objections to appellee’s motions for summary judgment.  Appellant attached expert reports from Charles Cody Jeffcoat, a senior electrical engineer at Fujitsu Network Communications, his own company, opining that the coffee maker caused appellant’s injuries.  In appellant’s reply, she asserted that appellee failed to show as a matter of law that there were no disputed factual issues.  On November 4, appellee filed a reply and objections to appellant’s summary judgment evidence.  Also on November 4, in response, appellant filed an emergency response to appellee’s reply along with objections stating that although she had not prepared medical affidavits from experts, both she and Jeffcoat reference her injuries.  That same day, the trial court heard arguments on the summary judgment motions and on November 15, the trial court entered an order granting appellee’s motions for summary judgment “in their entirety.”  The trial court did not expressly rule on appellee’s objections.  

III. Assignment of Error

Appellant presents one point on appeal challenging the granting of the summary judgment.  Appellee claims that because appellant’s point on appeal focuses on only one ground, we should affirm the trial court’s order on the remaining grounds. 
See 
Wright v. Fowler
, 991 S.W.2d 343, 349 (Tex. App.སྭFort Worth 1999, no pet.).  

Appellee moved for summary judgment on three bases; two under the no-evidence standard and one under the traditional standard: (1) there was no evidence of the essential element of causation for each of appellant’s claims, (2) there was no medical evidence in support of appellant’s allegation that she suffered an electrical shock from the coffee maker, and (3) the evidence in the case conclusively showed that the coffee maker could not have caused appellant’s alleged injuries, the traditional motion.

In the table of contents to appellant’s brief, she states her point on appeal as, “The Trial Court erroneously granted summary judgment to Appellee Bunn-o-Matic Corporation on a basis of 
no evidence 
and the trial court erred in not considering the Affidavits and Reports of Appellant’s expert and Appellant’s own sworn testimony as summary judgment evidence raising a genuine issue of material fact,” citing only rule 166a(i).  [Emphasis added.]  
Tex. R. Civ. P.
 166a(i).  However, in her argument, appellant states her point on appeal as, “The Trial Court erroneously granted summary judgment to Appellee BUNN-O-MATIC CORPORATION on a basis of 
no evidence of causation 
and the Trial Court erred in not considering the Affidavit and Report of Appellant’s expert and Appellant’s own sworn testimony as summary judgment 
evidence
 
raising a genuine issue of material fact as to causation,”
 again citing only rule 166a(i).  [Emphasis added.].  
Id.
  Nowhere in appellant’s brief does she cite the traditional summary judgment rule, rule 166a(c), even though s
he discusses the conflicting evidence regarding whether the coffee maker could have ever shorted out.  
Tex. R. Civ. P.
 166a(c).

We construe the first part of appellant’s argument as a specific challenge to appellee’s rule 166a(i) no-evidence summary judgment motion on causation only and the latter part as a specific challenge to causation under a traditional summary judgment motion.  Thus, she failed to assign error to appellee’s only ground that was not related to causationསྭthat there was no medical evidence in support of appellant’s allegations that she suffered an electrical shock from the coffee maker.
(footnote: 3)  

When the trial court's judgment rests upon more than one independent ground or defense, the aggrieved party must assign error to each ground, or the judgment will be affirmed on the ground to which no complaint is made.  
Wright
, 991 S.W.2d at 349; 
see 
Malooly Bros., Inc. v. Napier
, 461 S.W.2d 119, 120 (Tex. 1970); 
cf.  Cruikshank v. Consumer Direct Mortg., Inc
., 138 S.W.3d 497, 502-03 (Tex. App.སྭHouston [14th Dist.] 2004, pet. denied) (holding that if appellant brings a general point, they must provide argument for each summary judgment bases in the argument of the brief).  Because appellant did not assign error to the ground that there was no medical evidence to show that she was shocked and, thus, injured, we overrule appellant’s sole point.  

IV.  Conclusion

Having overruled appellant’s sole point, we affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL F: CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

CAYCE, C.J. concurs without opinion.

MCCOY, J. filed a dissenting opinion.

DELIVERED: February 23, 2006

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-05-064-CV

WHITNEY ENGEL APPELLANT

V.

BUNN-O-MATIC CORPORATION APPELLEE

------------

FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

------------

DISSENTING MEMORANDUM OPINION
(footnote: 1)

------------

I respectfully dissent.

In Bunn-O-Matic’s supplement to its motion for summary judgment, it  asserts that “[t]here is no medical evidence in support of Plaintiff Whitney Engel’s allegation that she suffered an electrical shock from the coffee maker in question.” 

As to the medical evidence issue, which presupposes that a shock of this nature would be subject to medical detection, I would hold that no medical evidence is necessary.  Engel is not claiming that her injuries were directly caused by the 
shock
, but rather by the 
fall
, and the question of whether she was shocked is addressed in her response to Bunn-O-Matic’s original motion.  Engel’s affidavit states,  

I received a severe shock 
from the machine which knocked me down onto the hard tile floor.  I almost passed out.  It was not an epileptic seizure which is very different for me. [Emphasis added.]

Charles Cody Jeffcoat, an electrical engineer hired by Engel, states in his affidavit,

In summary, the machine is unsafe and defective for several reasons. First, the “air pipe” system failed.  It corroded and leaks water into the machine which causes contact with the electrically charged components.  This pipe does not just carry air, it also carries water which leaks out and conducts electricity to the case. Second, there is current leakage from another, electronic source that causes a leakage of 85 volts of electricity to the metal chassis of the machine which is a dangerous amount of electricity for any user to come in contact with.  Further, with the presence of water on the metal counter on which the machine set, there was excellent grounding for 
maximum danger as to electrical shock
.

Mrs. Engel states that she was wiping the metal case near the “air pipe” exit or near the coffee basket when she was shocked.  If she had been touching the metal surface of the counter while doing so, a dangerous shock could have and probably did occur.  There were 
two separate reasons for such a shock to occur
; both were caused by dangerous product defects.

. . . .

In my opinion, there is good reason to believe that causation exists as to Mrs. Engel’s injuries and the stated defects in the subject product.  In my opinion it was hazardous, negligent and dangerous, to design, construct and market this machine.  It was designed for very heavy commercial usage, which was the case here, but it did not appear to hold up.  The machine was less than 5 years old 
when Mrs. Engel was shocked
.  She could have been electrocuted if she had not fallen and broken contact.  With Mrs. Engel’s known neurological problems, with her epilepsy, there could be severe neurological results as well as orthopedic results and injuries from her fall to the tile floor. [Emphasis added.]

Jeffcoat further opined in a report dated August 6, 2004, 

The testing of Defendant’s expert, Mr. Edie, was entirely inadequate, and his results clearly contrary to mine.  I tested the machine many times.  Mr. Edie tested it once.  The electrical read-outs and the amount of water leakage varied between tests.  The corroded air pipe itself, now rusted into, shows failure of design and manufacturing standards.  
The electrical current leaking directly to the case 
shows the same.  

One of the two filler tubes that from the lot [sic] water reservoir into the faucet above the steep basket was rusted in two, i.e. every time the “on” switch would be depressed to make coffee, a portion of the water would spill down the inside of the machine to cause the whole machine, which is all metal in construction and design, to become electrified.  This, of course, was highly dangerous 
with tremendous shock potential 
to anyone using the machine. However, this defect well might not have been noticed for quite sometime as the electrical short would only [have] been in effect while, or immediately after, the coffee pot was being filled, i.e. during its regular coffee making cycle.  After the water had ceased flowing and the machine had dried somewhat (and hot water tends to evaporate rapidly when in thin sheets), then the machine would be relatively safe to handle.  Also, if one were only touching the plastic handle of the coffee pot then no one would notice any current.

There was no internal or external switch of GFI that would have cut off the electrical supply completely if there was a short.  This would have been an important and relatively low cost add-on which would have made the machine much safer, especially in view of its use of 220 electrical volt supply. [Emphasis added.]

Jeffcoat’s August 30, 2004 addendum report states,

The point here is that at the time of Mrs. Engel[’s] injury, her shock was caused by the stream of water being expressed with pressure (squirted) to the upper front of the machine where the higher voltage contacts were available for temporary current leakage to the chassis (the upper pipe seems to be on overflow for high pressure steam and water, with the lower pipe supplying the bulk of the hot water to the coffee basket where it ends in a nozzle to spread the hot water evenly over the ground coffee[)].  This sort of 
current leakage to the chassis 
would only have lasted while the machine was cycling with the small pin like deterioration holes sending a stream or streams of water up and forward to the exposed 220 contacts of the top burner.  
This would definitely shock someone 
who touched the energized all steel machine while the coffee maker was cycling (making its pot of coffee).

This is the only logical and reasonable explanation possible and fits the known circumstances perfectly.  Obviously, the machine was not shorting out for a sufficient amount of time to break the current in the electrical supply source, but it was leaking enough to the chassis 
sufficient to cause momentary high voltage shocks 
throughout the machine body.  

Without a ground fault interrupt in place the condition could go unnoticed unless the water leakage was noticed.  This condition would cause no damage to the machine, and the machine would function as normal.  Brief periods, during coffee brewing, would occur where the chassis of the machine would become energized. Unfortunately, during one of the periods where the chassis was energized 
Mrs. Engel was almost electrocuted 
when wiping the steel cabinet with a wet cloth while the machine was processing a pot of coffee.  [Emphasis added.]

Accordingly, I dissent to the majority’s summary judgment analysis and holding.  I would sustain Engel’s point, reverse the trial court’s summary judgment for Bunn-O-Matic, and remand the case to the trial court.

BOB MCCOY

JUSTICE

DELIVERED: February 23, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
The supplemental evidence consisted of a supplemental affidavit of John Edie, a customer service manager for appellee, discussing the various parts of the coffee maker.

3:
In her brief, appellant restates this ground as “[t]here is no evidence of actual injury.”

1:
See 
Tex. R. App. P. 
47.4.