COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-064-CV

 

 

WHITNEY ENGEL                                                                 APPELLANT

 

                                                   V.

 

BUNN-O-MATIC CORPORATION                                                APPELLEE

 

                                              ------------

 

           FROM
THE 342ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction

In one point, appellant
Whitney Engel appeals from the trial court=s grant of summary judgment in favor of appellee Bunn-O-Matic
Corporation.  We affirm.








II.  Background Facts

In her petition, appellant
claimed that on August 6, 2000, while she was working as a waitress at the
Denny=s Classic Diner on North Cooper in Arlington, Texas, she received an
electrical shock while cleaning the restaurant=s model OT-35 coffee maker. 
Appellee manufactured the coffee maker. 
Appellant alleges that as a result of the electrical shock, she fell to
the floor, was knocked unconscious, and suffered injuries to her head, back,
neck, shoulders, and arms.  Appellant
filed claims against appellee for design, manufacturing, operating, and
marketing defects of the coffee maker.

On August 5, 2004, appellee
filed a traditional and a no-evidence motion for summary judgment on the ground
that appellant had presented no evidence of causation.  On September 15, appellee filed a supplement
to its motions for summary judgment, along with supplemental evidence,[2]
asserting that there was no medical evidence in support of appellant=s allegations that she received an electrical shock from the coffee
maker.  On September 22, appellee filed
additional supplemental evidence in support of its motions for summary
judgment, which contained drawings of the coffee maker and its parts.








On October 28, appellant
filed a reply and objections to appellee=s motions for summary judgment. 
Appellant attached expert reports from Charles Cody Jeffcoat, a senior
electrical engineer at Fujitsu Network Communications, his own company, opining
that the coffee maker caused appellant=s injuries.  In appellant=s reply, she asserted that appellee failed to show as a matter of law
that there were no disputed factual issues. 
On November 4, appellee filed a reply and objections to appellant=s summary judgment evidence. 
Also on November 4, in response, appellant filed an emergency response
to appellee=s reply
along with objections stating that although she had not prepared medical
affidavits from experts, both she and Jeffcoat reference her injuries.  That same day, the trial court heard
arguments on the summary judgment motions and on November 15, the trial court
entered an order granting appellee=s motions for summary judgment Ain their entirety.@  The trial court did not
expressly rule on appellee=s objections.  

III. Assignment of Error

Appellant presents one point
on appeal challenging the granting of the summary judgment.  Appellee claims that because appellant=s point on appeal focuses on only one ground, we should affirm the
trial court=s order on
the remaining grounds. See Wright v. Fowler, 991 S.W.2d 343, 349 (Tex.
App._Fort Worth 1999, no pet.).  








Appellee moved for summary
judgment on three bases; two under the no-evidence standard and one under the
traditional standard: (1) there was no evidence of the essential element of
causation for each of appellant=s claims, (2) there was no medical evidence in support of appellant=s allegation that she suffered an electrical shock from the coffee
maker, and (3) the evidence in the case conclusively showed that the coffee
maker could not have caused appellant=s alleged injuries, the traditional motion.








In the table of contents to
appellant=s brief, she
states her point on appeal as, AThe Trial Court erroneously granted summary judgment to Appellee
Bunn-o-Matic Corporation on a basis of no evidence and the trial court
erred in not considering the Affidavits and Reports of Appellant=s expert and Appellant=s own sworn testimony as summary judgment evidence raising a genuine
issue of material fact,@ citing only
rule 166a(i).  [Emphasis added.]  Tex.
R. Civ. P. 166a(i).  However, in
her argument, appellant states her point on appeal as, AThe Trial Court erroneously granted summary judgment to Appellee
BUNN-O-MATIC CORPORATION on a basis of no evidence of causation and the
Trial Court erred in not considering the Affidavit and Report of Appellant=s expert and Appellant=s own sworn testimony as summary judgment evidence raising a
genuine issue of material fact as to causation,@ again citing only rule 166a(i). 
[Emphasis added.].  Id.  Nowhere in appellant=s brief does she cite the traditional summary judgment rule, rule
166a(c), even though she discusses the conflicting evidence regarding whether
the coffee maker could have ever shorted out. 
Tex. R. Civ. P. 166a(c).

We construe the first part of
appellant=s argument
as a specific challenge to appellee=s rule 166a(i) no-evidence summary judgment motion on causation only
and the latter part as a specific challenge to causation under a traditional
summary judgment motion.  Thus, she
failed to assign error to appellee=s only ground that was not related to causation_that
there was no medical evidence in support of appellant=s allegations that she suffered an electrical shock from the coffee
maker.[3]  








When the trial court's
judgment rests upon more than one independent ground or defense, the aggrieved
party must assign error to each ground, or the judgment will be affirmed on the
ground to which no complaint is made.  Wright,
991 S.W.2d at 349; see Malooly Bros., Inc. v. Napier, 461 S.W.2d 119,
120 (Tex. 1970); cf.  Cruikshank v.
Consumer Direct Mortg., Inc., 138 S.W.3d 497, 502-03 (Tex. App._Houston
[14th Dist.] 2004, pet. denied) (holding that if appellant brings a general
point, they must provide argument for each summary judgment bases in the
argument of the brief).  Because
appellant did not assign error to the ground that there was no medical evidence
to show that she was shocked and, thus, injured, we overrule appellant=s sole point.  

IV.  Conclusion

Having overruled appellant=s sole point, we affirm the trial court=s judgment.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL F:    CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

 

CAYCE,
C.J. concurs without opinion.

 

MCCOY,
J. filed a dissenting opinion.

 

DELIVERED:
February 23, 2006











 
 
 
 
 
 
 




 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-05-064-CV

 

 

WHITNEY ENGEL                                                                 APPELLANT

 

                                                   V.

 

BUNN-O-MATIC CORPORATION                                                APPELLEE

 

                                              ------------

 

           FROM
THE 342ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                     DISSENTING
MEMORANDUM OPINION[1]

 

                                              ------------

I respectfully dissent.

In Bunn-O-Matic=s supplement to its motion for summary judgment, it  asserts that A[t]here is no medical evidence in support of Plaintiff Whitney Engel=s allegation that she suffered an electrical shock from the coffee
maker in question.@ 








As to the medical evidence
issue, which presupposes that a shock of this nature would be subject to
medical detection, I would hold that no medical evidence is necessary.  Engel is not claiming that her injuries were
directly caused by the shock, but rather by the fall, and the
question of whether she was shocked is addressed in her response to
Bunn-O-Matic=s original
motion.  Engel=s affidavit states,  

I
received a severe shock from the machine which knocked me down
onto the hard tile floor.  I almost
passed out.  It was not an epileptic
seizure which is very different for me. [Emphasis added.]

 

Charles Cody Jeffcoat, an electrical engineer
hired by Engel, states in his affidavit,

In
summary, the machine is unsafe and defective for several reasons. First, the Aair
pipe@
system failed.  It corroded and leaks
water into the machine which causes contact with the electrically charged
components.  This pipe does not just
carry air, it also carries water which leaks out and conducts electricity to
the case. Second, there is current leakage from another, electronic source that
causes a leakage of 85 volts of electricity to the metal chassis of the machine
which is a dangerous amount of electricity for any user to come in contact
with.  Further, with the presence of water
on the metal counter on which the machine set, there was excellent grounding
for maximum danger as to electrical shock.

 

Mrs.
Engel states that she was wiping the metal case near the Aair
pipe@ exit
or near the coffee basket when she was shocked. 
If she had been touching the metal surface of the counter while doing
so, a dangerous shock could have and probably did occur.  There were two separate reasons for such a
shock to occur; both were caused by dangerous product defects.

 








. . . .

 

In my
opinion, there is good reason to believe that causation exists as to Mrs. Engel=s
injuries and the stated defects in the subject product.  In my opinion it was hazardous, negligent and
dangerous, to design, construct and market this machine.  It was designed for very heavy commercial
usage, which was the case here, but it did not appear to hold up.  The machine was less than 5 years old when
Mrs. Engel was shocked.  She could
have been electrocuted if she had not fallen and broken contact.  With Mrs. Engel=s
known neurological problems, with her epilepsy, there could be severe
neurological results as well as orthopedic results and injuries from her fall
to the tile floor. [Emphasis added.]

 

Jeffcoat
further opined in a report dated August 6, 2004, 

 

The
testing of Defendant=s
expert, Mr. Edie, was entirely inadequate, and his results clearly contrary to
mine.  I tested the machine many
times.  Mr. Edie tested it once.  The electrical read-outs and the amount of
water leakage varied between tests.  The
corroded air pipe itself, now rusted into, shows failure of design and
manufacturing standards.  The
electrical current leaking directly to the case shows the same.  

 








One
of the two filler tubes that from the lot [sic] water reservoir into the faucet
above the steep basket was rusted in two, i.e. every time the Aon@
switch would be depressed to make coffee, a portion of the water would spill
down the inside of the machine to cause the whole machine, which is all metal
in construction and design, to become electrified.  This, of course, was highly dangerous with
tremendous shock potential to anyone using the machine. However, this
defect well might not have been noticed for quite sometime as the electrical
short would only [have] been in effect while, or immediately after, the coffee
pot was being filled, i.e. during its regular coffee making cycle.  After the water had ceased flowing and the
machine had dried somewhat (and hot water tends to evaporate rapidly when in
thin sheets), then the machine would be relatively safe to handle.  Also, if one were only touching the plastic
handle of the coffee pot then no one would notice any current.

 

There
was no internal or external switch of GFI that would have cut off the
electrical supply completely if there was a short.  This would have been an important and
relatively low cost add-on which would have made the machine much safer,
especially in view of its use of 220 electrical volt supply. [Emphasis added.]

 

Jeffcoat=s
August 30, 2004 addendum report states,

 

The point here is that at the time of Mrs. Engel[=s]
injury, her shock was caused by the stream of water being expressed with
pressure (squirted) to the upper front of the machine where the higher voltage
contacts were available for temporary current leakage to the chassis (the upper
pipe seems to be on overflow for high pressure steam and water, with the lower
pipe supplying the bulk of the hot water to the coffee basket where it ends in
a nozzle to spread the hot water evenly over the ground coffee[)].  This sort of current leakage to the
chassis would only have lasted while the machine was cycling with the small
pin like deterioration holes sending a stream or streams of water up and
forward to the exposed 220 contacts of the top burner.  This would definitely shock someone who
touched the energized all steel machine while the coffee maker was cycling
(making its pot of coffee).

 

This is the only logical and reasonable
explanation possible and fits the known circumstances perfectly.  Obviously, the machine was not shorting out
for a sufficient amount of time to break the current in the electrical supply
source, but it was leaking enough to the chassis sufficient to cause
momentary high voltage shocks throughout the machine body.  

 








Without a
ground fault interrupt in place the condition could go unnoticed unless the
water leakage was noticed.  This
condition would cause no damage to the machine, and the machine would function
as normal.  Brief periods, during coffee
brewing, would occur where the chassis of the machine would become energized.
Unfortunately, during one of the periods where the chassis was energized Mrs.
Engel was almost electrocuted when wiping the steel cabinet with a wet
cloth while the machine was processing a pot of coffee.  [Emphasis added.]

Accordingly, I dissent to the
majority=s summary judgment analysis and holding.  I would sustain Engel=s point, reverse the trial court=s summary judgment for Bunn-O-Matic, and remand the case to the trial
court.

 

BOB MCCOY

JUSTICE

 

DELIVERED: February 23, 2006

 











[1]See Tex. R. App. P. 47.4.





[2]The
supplemental evidence consisted of a supplemental affidavit of John Edie, a
customer service manager for appellee, discussing the various parts of the
coffee maker.





[3]In
her brief, appellant restates this ground as A[t]here
is no evidence of actual injury.@





[1]See Tex. R. App. P. 47.4.