

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

## No. 02-25-00076-CV

_____

SAM OSAMA MOHAMAD MAHASNEH, Appellant

V.

TALA DALGAMOUNI MAHASNEH, Appellee

---

On Appeal from the 325th District Court
Tarrant County, Texas
Trial Court No. 325-759985-24

---

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

## I.  INTRODUCTION

Appellant Sam Osama Mohamad Mahasneh (S.M.) appeals a thirty-year protective order granted against him, protecting his ex-wife, Appellee Tala Dalgamouni Mahasneh (T.M.), and protecting members of her family and household.  *See* Tex. Code Crim. Proc. Ann. art. 7B.003; Tex. Fam. Code. Ann. § 85.022.  S.M. raises five issues challenging the order, none of which rise to the level of error.  However, S.M. also raises one issue challenging the award of attorney's fees.  Because the evidence supporting the amount of the trial court's award of attorney's fees was insufficient, we will reverse and remand on that issue only.

## II.  BACKGROUND

S.M. and T.M. were married in 2000.  They had four children, each of whom is now an adult;[1] only the youngest still lived at home with T.M. at times relevant to this appeal.

S.M. and T.M. separated in 2014 and then reunited in 2015.  In 2016, S.M. was arrested for assaulting T.M. and causing injury by biting her arm, a Class A

---

[1] The youngest child's eighteenth birthday was in the month following the 2025 protective order hearing.

misdemeanor. Later that year, S.M. was also indicted for the offense of violating a protective order more than once within 12 months.[2]

S.M. and T.M. separated again in 2017 and T.M. filed for divorce. At the beginning of the divorce proceeding, the court granted a protective order with an expiration date in March 2020, intended to encompass the entire proceeding. Among other restrictions, the protective order prohibited S.M. from communicating with T.M. in any manner except through text message or a court-ordered messaging application and only when necessary regarding the health and wellbeing of their children.

S.M. left seven voicemails[3] for T.M. between December 2018 and March 2019. The voicemails came from a phone number that S.M. had used during that time. The voicemails largely contain ambient sound including some speaking voices that T.M. identified as including S.M.'s voice.[4] None of the voicemails contain any mention of the children or their health or wellbeing.

In 2018, S.M. pleaded guilty to both of his pending criminal offenses from 2016. He was placed on twelve months' deferred adjudication probation for assault and on

---

[2]The record does not contain indictments or judgments related to these two offenses.

[3]At the 2025 hearing, T.M. introduced 15 voicemail recordings from Appellant in two groups that were recorded in 2018 and 2019 and in 2024. All 15 of the voicemail recordings were admitted without objection.

[4]At trial, T.M. testified that she identified S.M.'s voice in the voicemail recordings. He did not object to this testimony.

3

six years' deferred adjudication probation for violating a protective order more than once.[5]

In 2019, the divorce was finalized. Later that year, S.M. completed his probation for assault. In 2024, S.M. completed his probation for violating a protective order.

Also in 2024, T.M. reported to the police that S.M. was stalking her. T.M. alleged that S.M. drove by her work and home repeatedly, placed a GPS tracking device in her car, left her eight voicemails between August 31 and October 9, 2024,[6] and went to their youngest child's school to demand visitation. At the time, S.M. was living in his car. He used a gym in a shopping center that shared T.M.'s workplace's parking lot.[7]

S.M. was criminally charged with stalking, and in October 2024, a Tarrant County magistrate granted T.M. an order of emergency protection that prohibited S.M. from

---

[5]During his testimony at the 2025 protective order hearing, S.M. asserted his Fifth Amendment right against self-incrimination when asked if he had received probation for the assault charge. In a civil case, a factfinder may draw negative inferences from a party's invocation of the Fifth-Amendment privilege against self-incrimination. Tex. R. Evid. 513(a), (c); *Wilz v. Flournoy*, 228 S.W.3d 674, 677 (Tex. 2007).

[6]Of the eight voicemails left in 2024, two contained only ambient sound and six were lengthy messages apologizing to T.M. and asking for reunification or to see the children. In one of the calls, S.M. said he was responding to a return call from T.M.'s phone.

[7]At the protective order hearing, S.M. asserted his Fifth-Amendment privilege when asked whether a person at T.M.'s apartment building could see the parking lot of her workplace and whether S.M. had been arrested for a stalking offense while he was in that parking lot.

going near T.M.'s home, place of employment, or place of business.[8]  As a condition of S.M.'s bond release, he was prohibited from communicating with T.M. and members of her household.  That bond condition—and the pendency of the criminal charge—both preceded and persisted beyond the 2025 protective order hearing date.

In November 2024, the Tarrant County District Attorney's office, on T.M.'s behalf, applied for a protective order against S.M.  The application alleged that family violence, violation of a protective order, and stalking had occurred and sought a protective order under Title 4 of the Texas Family Code and Chapter 7B of the Texas Code of Criminal Procedure.  The trial court granted T.M. a temporary ex parte protective order, citing the Code of Criminal Procedure as authority.[9]  S.M. answered with a general denial and pleaded the affirmative defenses of laches and res judicata.  In February 2025, the trial court held a final evidentiary hearing where three witnesses testified:  T.M., S.M., and T.M.'s attorney as expert on attorney's fees.

After the parties presented their closing arguments, the trial court found reasonable grounds to believe that T.M. had been a victim of stalking and that S.M. had previously violated a protective order.  The court found that S.M. represented a credible threat to the physical safety of T.M. or other members of T.M.'s family or household and acknowledged that S.M.'s 2024 stalking case was ongoing.  The court granted a 30-

---

[8] *See* Tex. Code. Crim. Proc. Ann. art. 17.292.

[9] *See id.* 7B.002, 7B.006.

year protective order[10] against S.M., stating, "[T]hat will get y'all through the duration of [S.M.'s] life." The trial court also granted $2,250 in attorney's fees to T.M. The written order that the trial court rendered contained findings that family violence had previously occurred,[11] that S.M. had violated a protective order by committing an act prohibited by the order as provided in Section 85.022 of the Texas Family Code, that reasonable grounds existed to find that T.M. was the victim of stalking, and that the order should be entered pursuant to Article 7B.003. *See* Tex. Code Crim. Proc. Ann. art. 7B.003; Tex. Fam. Code Ann. § 85.022.

## III. DISCUSSION

On appeal, S.M. argues six issues: two alleging due process violations and four alleging insufficient evidence.

### A. DUE PROCESS

S.M. argues that his due process rights were violated because the protective order did not include a finding by clear-and-convincing evidence of good cause to prohibit communication between S.M. and his children and that his due process rights were violated when the court granted the order under Chapter 7B of the Code of Criminal Procedure "without proper notice in the pleadings."

---

[10]The protective order expires in February 2055.

[11]The trial court struck a proposed finding in the order stating that S.M. had committed family violence necessitating a protective order under Chapter 85 of the Texas Family Code.

6

### 1. Prohibition as to Communication with Children

In arguing that the protective order deprived him of his right to parent, S.M. first argues that the trial court's order does not contain the required findings to grant a protective order under Chapter 85 of the Texas Family Code.

Whether S.M. is correct is immaterial, because the trial court did make the required findings to grant an order under the Texas Code of Criminal Procedure, Chapter 7B. *See* Tex. Code Crim. Proc. Ann. art. 7B.003; *see Noyes v. State for Voges*, No. 03-22-00071-CV, 2023 WL 8102025, at *5–6 (Tex. App.—Austin Nov. 22, 2023, pet. filed) (holding that statutory finding of felony offense under Family Code is not required under Chapter 7B); *see also Garza v. Renteria*, No. 14-24-00079-CV, 2025 WL 2413260, at *3 (Tex. App.—Houston [14th Dist.] Aug. 21, 2025, no pet.) (recognizing that, although allegations may satisfy both, protective-order findings under the two codes are distinct). The trial court found that T.M. was a victim of the criminal offense of stalking under the Penal Code, Section 42.072. *See* Tex. Code Crim. Proc. Ann. arts. 7B.001(a)(1), 7B.003; Tex. Penal Code Ann. § 42.072. The trial court entered the protective order "pursuant to Article 7B.003" and found that S.M. "represents a credible threat to the physical safety of [T.M.] or other members of the family or household." The order thus contains the findings of good cause required under the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 7B.003; *Garza*, 2025 WL 2413260, at *3.

S.M. then argues, citing *Stary v. Etheridge*, that the order violated his due process right to parent his children because the trial court, in issuing a protective order that prohibits contact between him and his children, failed to make required findings by clear and convincing evidence. [AntBr 5–6/PDF 14–15] *See* 712 S.W.3d 584, 594–96 (Tex. 2025); Tex Code Crim. Proc. Ann. art. 7B.002; Tex. Fam. Code Ann. §§ 85.001, 85.022.

Although *Stary* reversed a court's protective order that prohibited all communication between a parent and her minor children for more than two years—because it implicated the fundamental right to parent and had not been issued on clear and convincing evidence—the Texas Supreme Court did not expressly extend its holding to protective orders implicating contact with adult children, nor did it rely on reasoning related or applicable to parental relationships with adult children. *See Stary*, 712 S.W.3d at 596; *see also* Tex. Fam. Code Ann. § 101.003(a) (defining a child under the Family Code as "a person under 18 years of age who is not and has not been married or who has not had the disabilities of minority removed for general purposes"), § 101.025 (defining a parent–child relationship as "the legal relationship between a child and the child's parents"). Although S.M. states that the higher standard of review should apply here, he has provided no authority supporting an argument that a Chapter 7B protective order cannot properly include adult children within its scope of protected persons. *See, K.B. v. E.B.*, No. 02-24-00481-CV, 2025 WL 2264196, at *7 (Tex. App.—Fort Worth Aug. 7, 2025, pet. denied) (mem. op.).

8

As an initial matter, S.M. did not raise this issue in the trial court, so he failed to preserve the issue for appellate review. *See* Tex. R. App. P. 33.1 (To preserve a complaint for appellate review, "the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion[.]"); *In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003) (affirming trial court's termination order where parent failed to preserve a due-process claim on appeal); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) ("As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal."); *In re R.J.K.*, No. 05-24-00099-CV, 2025 WL 2723277, at *7 (Tex. App.—Dallas Sept. 24, 2025, no pet.); *cf. Stary*, 712 S.W.3d at 588 (recognizing actions taken to place the issue before the trial court). Regardless, S.M.'s due process arguments fail on the merits.

Domestic violence protective orders should be the least intrusive means to accomplish the measures of protection needed. *Stary*, 712 S.W.3d at 587. The reasoning in *Stary* for extending the heightened standard to protective orders with a duration longer than two years is to preserve "the right to enjoy a natural family unit," because it is "no less important than the right to liberty." *Id.* at 594 (quoting *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980)). Like parental terminations, "protective orders that prohibit contact [between a parent and child] for over two years 'break the ties between a parent and child.'" *Id.* at 592 (*quoting Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

This is not the first time the question of extending *Stary* to include adult children has come before our court. *See K.B.*, 2025 WL 2264196, at *3. In *K.B.*, we declined to extend *Stary*'s reasoning to require a clear-and-convincing-evidence finding to issue a protective order prohibiting contact between a parent and her adult children for more than two years. *Id.* As in *K.B.*, we decline again to extend the reasoning to S.M.'s three older children who were not minors. However, unlike the family in *K.B.*, the youngest child in this case was 17 years old for one month of the term of the challenged 30-year protective order.

The protective order did prohibit contact between S.M. and a minor child, but not for a period exceeding two years. The holding in *Stary* was limited to orders that prohibited contact between a parent and child for longer than two years, reasoning that a prohibition of that duration would break the ties between parent and child. *Stary*, 712 S.W.3d at 592. The court declined to comment on the implications of orders lasting less than two years. *Id.* at 595 n.60.

Further, S.M. was already prohibited from contacting his youngest child by the conditions of the bond on his stalking charge. The court's protective order in this case did not prohibit S.M. from contacting any minor child whom he was legally permitted to contact while the child was a minor or from exercising any right to physical custody of his children that he could exercise. We decline to extend *Stary* to require a heightened evidentiary standard for issuance of an order prohibiting contact for a single month

10

while contact was otherwise prohibited or an order prohibiting contact between parents and adult children for more than two years. *See id.*; *K.B.*, 2025 WL 2264196, at *3.

We overrule this issue.

### 2. Notice as to Pleadings

S.M. argues that the application for protective order did not provide sufficient notice that he was accused of behavior constituting stalking and that the application sought a protective order under Chapter 7B.

During the 2025 protective order hearing, when S.M. was asked about his 2024 stalking arrest, his attorney objected twice to relevance based on the pleadings.

In the first objection, S.M.'s attorney argued that "[c]ounsel has not pled for a protective order based on stalking. The only ground[] today is about a violation of a protective order." The trial court overruled the objection.

In the second objection, shortly thereafter, S.M.'s counsel again argued that T.M. had not alleged stalking as a ground for the protective order. In response to the objection, her attorney read portions of the application for protective order into the record. The court also overruled the second objection.

Proceedings under Chapter 7B are "undisputedly civil matters." *Goldstein v. Sabatino*, 690 S.W.3d 287, 291 (Tex. 2024). The Rules of Civil Procedure require that a pleading contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." Tex. R. Civ. P. 47(a). Fair notice means that the pleadings must be "specific enough that an opposing attorney, of reasonable competence, with the

11

pleadings before him, can ascertain the nature of the basic issues of the controversy and the testimony probably relevant." *Wright v. Fowler*, 991 S.W.2d 343, 353 (Tex. App.—Fort Worth 1999, no pet.); *see Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). The pleadings must provide fair notice of the claim and the relief sought such that the opposing party can prepare a defense. *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding). Even the omission of an element is not fatal if the cause of action may be reasonably inferred from what is specifically stated. *Id.* (citing *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993)).

A request for a protective order related to a charge of stalking is made by filing an application in the same manner as required under Title 4 of the Family Code. Tex. Code Crim. Proc. Ann. art. 7B.051. A pleading should give the respondent notice that a protective order may issue if the court finds that probable cause exists to believe that a stalking offense occurred and that the person to be restrained is likely in the future to engage in prohibited stalking conduct under Texas Penal Code Section 42.072(a). *Id.* art. 7B.003; Tex. Penal Code Ann. § 42.072(a)(1), (2), (3). A person commits the offense of stalking if he, on more than one occasion and pursuant to a scheme or course of conduct directed at a specific other person, knowingly engages in conduct that:

(1) constitutes an offense under Texas Penal Code § 42.07, or that the actor knows or reasonably should know the other person will regard as threatening:

(A) bodily injury or death for the other person; or

(B) that an offense will be committed against:

12

> (i)     a member of the other person's family or household;
>
> (ii)    an individual with whom the other person has a dating relationship; or
>
> (iii)   the other person's property;

(2)    causes the other person, a member of the other person's family or household, or an individual with whom the other person has a dating relationship:

> (A)    to be placed in fear of bodily injury or death or in fear that an offense will be committed against the other person, a member of the other person's family or household, or an individual with whom the other person has a dating relationship, or the other person's property; or
>
> (B)    to feel harassed, terrified, intimidated, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

(3)    would cause a reasonable person under circumstances similar to the circumstances of the other person to:

> (A)    fear bodily injury or death for the person;
>
> (B)    fear that an offense would be committed against a member of the person's family or household or an individual with whom the person has a dating relationship;
>
> (C)    fear that an offense will be committed against the person's property; or
>
> (D)    feel harassed, terrified, intimidated, annoyed, alarmed, abused, tormented, embarrassed, or offended.

Tex. Penal Code Ann. § 42.072(a); *see id.* § 42.07(a) (setting out elements of offense of harassment).

T.M.'s application for a protective order states in its first paragraph that the action is brought under "Title 4, Texas Family Code and Chapter 7B, Texas Code of

13

Criminal Procedure." The application alleges grounds including family violence, violation of a protective order, and stalking. The application includes a request that S.M. be prohibited from communicating a threat to T.M. or a member of her household and from engaging in conduct, including following T.M., "that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass" T.M. or a member of her household. Further, the application incorporates T.M.'s supporting affidavit. The affidavit alleges that S.M. "has engaged in conduct which constitutes family violence and stalking."

Therefore, the application was sufficient to give S.M. fair notice that T.M. sought a protective order under Chapter 7B for grounds including stalking, and it sufficiently laid out allegations of conduct amounting to stalking. *See* Tex. Code Crim. Proc. Ann. art. 7B.052; *Martinez v. Martinez*, 52 S.W.3d 429, 433 (Tex. App.—Fort Worth 2001, pet. denied).[12] Accordingly, we overrule this issue.

---

[12]S.M. couches this issue as an abuse of discretion, but provides no argument for this contention or appropriate citation to authority. *See* Tex. R. App. P. 38.1(i). However, because the trial court did not violate due process, it did not abuse its discretion by issuing the protective order. *See e.g.*, *Telegina v. Nechayuk*, No. 09-22-00383-CV, 2024 WL 5080262, at *11 (Tex. App.—Beaumont Dec. 12, 2024), supplemented, No. 09-22-00383-CV, 2025 WL 52479 (Tex. App.—Beaumont Jan. 9, 2025, no pet.) (holding trial court did not abuse its discretion when it determined that recognition of foreign wedding did not violate party's due process rights); *Thornton v. Tex. Dep't of Protective & Regulatory Services*, No. 03-01-00317-CV, 2002 WL 246408, at *2 (Tex. App.—Austin Feb. 22, 2002, pet. denied) (holding the court did not abuse its discretion because its decision not to appoint counsel did not violate due process).

14

## B. EVIDENTIARY SUFFICIENCY

S.M. argues in his remaining issues that insufficient evidence supported (1) the trial court's findings that he violated a prior protective order, that a more-than-two-year duration was appropriate for the protective order, and that T.M. was the victim of stalking; and (2) the trial court's award of attorney's fees and calculation of that amount.

### 1. Standard of Review

In a trial to the court in which no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). When a reporter's record is filed, these implied findings are not conclusive, and an appellant may challenge them by raising issues challenging the legal and factual sufficiency of the evidence to support the judgment. *Id.* We apply the same standard when reviewing the sufficiency of the evidence to support implied findings that we use to review the evidentiary sufficiency of jury findings or a trial court's express findings of fact. *Id.* We must affirm the judgment if we can uphold it on any legal theory supported by the record. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766–67 (Tex. 2011).

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*,

554 S.W.3d 645, 658 (Tex. 2018). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

Anything more than a scintilla of evidence is legally sufficient to support a finding. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727–28 (Tex. 2003). More than a scintilla exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Gunn*, 554 S.W.3d at 658. On the other hand, no more than a scintilla exists when the evidence offered to prove a vital fact is so weak that it creates no more than a mere surmise or suspicion of its existence. *McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 397 (Tex. 2019); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Golden Eagle Archery, Inc. v. Jackson*,

16

116 S.W.3d 757, 770–76 (Tex. 2003) (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g)); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

Factual-insufficiency issues depend on which party has the burden of proof at trial. *See Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 184 (Tex. App.—Fort Worth 1995, no writ). Accordingly, when the party without the burden of proof on a fact issue complains of an adverse fact finding, that party must show that "insufficient evidence" supports the finding; that is, that the credible evidence supporting the finding is too weak or that the finding is against the great weight and preponderance of contrary credible evidence. *Id.*; *see Garza*, 395 S.W.2d at 823.

Findings of fact are the exclusive province of the factfinder. *Bellefonte Underwriters Ins. v. Brown*, 704 S.W.2d 742, 744 (Tex. 1986). A court of appeals cannot make original findings of fact; it can only "unfind" facts. *Tex. Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex. 1986). When conducting a factual-sufficiency review, a court of appeals must not merely substitute its judgment for that of the factfinder. *Golden Eagle Archery*, 116 S.W.3d at 761. The factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Id.*

If the court of appeals sustains an issue because the evidence is factually insufficient, it must reverse the trial court's judgment and remand for a new trial. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401–02 (Tex. 1981) (per curiam) (refusing writ n.r.e.). This court has no jurisdiction to render judgment based on an

17

insufficient-evidence or great-weight-and-preponderance issue. *Wright Way Spraying Serv. v. Butler*, 690 S.W.2d 897, 898 (Tex. 1985); *see In re King's Est.*, 244 S.W.2d 660, 662 (Tex. 1951).

### 2. Violation of Prior Protective Order

S.M. argues that insufficient evidence supported the trial court's finding that he violated a prior protective order. In the "findings" section of the protective order, the trial court found that S.M. had violated a protective order by committing an act prohibited by the order, that the order was in effect at the time of the violation, and that the order expired after the date the violation occurred. *See* Tex. Fam. Code Ann. § 85.022.

S.M. argues that T.M. introduced no evidence to show that he committed a prohibited act because the voicemails introduced at trial were not prohibited communications under the order. For this proposition, S.M. argues that the 2018 protective order allowed communication between the parties "regarding their shared children." However, this argument mischaracterizes the prohibition in the 2018 protective order and the contents of the voicemails.

The 2018 protective order allowed communication only through text messages or court-ordered text-messaging applications and only as required for the health and wellbeing of the children. The voicemails were not text messages, nor were they sent by the court-approved text messaging application specified in the order. The voicemails were not related to the health and wellbeing of the children—or related to them at all,

18

despite S.M.'s contentions to the contrary—as they contained only recordings of ambient sound and S.M.'s voice, not cohesive messages. The voicemails were thus not permitted communications under the 2018 order.

S.M. also argues that the voicemails from his telephone number were unintelligible to the point that "no factfinder could [have] conclude[d] that they were identifiable as any one person." S.M. here asks us to substitute our judgment for that of the court as factfinder and to reassess the weight to be given the evidence. *See Golden Eagle Archery*, 116 S.W.3d at 761. T.M. testified that she was familiar with S.M.'s voice and that she recognized his voice in the ambient sound in the 2018 recordings. Further, no evidence introduced at trial contradicted her testimony. We decline to second-guess the judgment of the trial court in weighing this evidence. *See Shields Ltd. P'ship*, 526 S.W.3d at 480.

Considering only the evidence supporting the trial court's order, more than a scintilla of evidence supported the trial court's finding that S.M. had previously violated a protective order. We hold that the evidence supporting the finding was legally sufficient.

Further, considering and weighing all the pertinent record evidence, the evidence supporting the trial court's finding that S.M. violated a previous protective order was largely uncontroverted and so was not against the great weight and preponderance of the evidence. *See Gooch*, 902 S.W.2d at 184. We hold that the evidence supporting the finding was also factually sufficient.

19

We overrule this issue.

### 3. The Duration of the Order

S.M. next argues that the trial court did not make required findings under Section 85.001 of the Texas Family Code to justify granting a protective order with a duration of more than two years and that the evidence was likewise legally and factually insufficient to justify that duration under the Family Code. *See* Tex. Fam. Code Ann. § 85.001(d).[13]

As already discussed, this argument is immaterial because the trial court did make the required findings under Article 7B.003, under which it issued the protective order. *See* Tex. Code Crim. Proc. Ann. art. 7B.003. A protective order issued under Article 7B.003 may be effective for the duration of the lives of the offender and victim or for any shorter period stated in the order. *Id.* art. 7B.007. Further, under Article 7B.003, the court need only make a finding that reasonable grounds exist to believe that the applicant was the victim of one of a number of offenses, including stalking. *Id.* arts. 7B.001(a)(1), 7B.003. The protective order here includes an affirmative finding that

---

[13]If a court issues a protective order under Section 85.001 that is effective for a period that exceeds two years, the court must also make an affirmative finding that the person who is the subject of the order committed an act constituting a felony offense involving family violence against the applicant or a member of the applicant's household, caused serious bodily injury to the applicant or a member of the applicant's household, or had been the subject of two previous protective orders rendered after a finding of family violence. *Tex. Fam. Code Ann.* §§ 85.001(d), 85.025(a). The order issued by the trial court did not expressly include those findings.

20

T.M. was the victim of stalking and that S.M. represents a credible threat to her physical safety and the physical safety of other members of her family or household. *See id.* art. 7B.003; Tex. Penal Code Ann. § 42.072(b); *Baker v. Bizzle*, 687 S.W.3d 285, 291–92 (Tex. 2024). The court thus made the required affirmative findings to have granted an order for the lifetime of the parties or any shorter period under Article 7B.003. Tex. Code Crim. Proc. Ann. art. 7B.003(b)

S.M. does not challenge the trial court's Chapter 7B findings so we do not address them. *See* Tex. R. App. P. 38.1(i), 47.1; *NexPoint Advisors, L.P. v. United Dev. Funding IV*, 674 S.W.3d 437, 446–47 (Tex. App.—Fort Worth 2023, pet. denied) (holding that "wholly inadequate" briefing does not present an adequate appellate issue); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006 no pet.) ("Failure to cite applicable authority or provide substantive analysis waives an issue on appeal."). We therefore overrule this issue.

### 4. Stalking

S.M. next argues that insufficient evidence supports the trial court's finding that T.M. was a victim of stalking.

Under Chapter 7B, the trial court must issue a protective order if it finds reasonable grounds to believe that the applicant has been a victim of stalking. Tex. Code Crim. Proc. Ann. art. 7B.003(b); Tex. Penal Code Ann. § 42.07.

The record contains sufficient evidence to support the trial court's finding that S.M. committed the offense of stalking against T.M. T.M. had made clear to S.M. that

she did not wish to be contacted and had filed charges of stalking against him. He had been convicted of criminal offenses against her of felony assault and violation of a previous protective order more than once within a period of twelve months. The temporary ex parte protective order signed on November 15, 2024, included a finding that a clear and present danger of stalking—among other harms—existed.

T.M.'s affidavit and her testimony at the hearing both indicated that S.M. had followed her to their child's school, her apartment, and her workplace; that he drove past T.M. as she drove between her work and home; and that he drove and parked in the area of her apartment and work multiple times. T.M. also testified that S.M. placed a GPS tracking device inside her vehicle.

S.M. invoked his Fifth Amendment rights when asked whether he had been released on bond after an arrest for the criminal offense of stalking and whether he was then the subject of a magistrate's order for emergency protection that prohibited him from contacting T.M.

A reasonable factfinder could have found that more than a scintilla of evidence established that S.M. committed the offense of stalking. *See* Tex. Penal Code Ann. § 42.07(a)(7), (9); 47.072; *In re R.J.K.*, No. 05-24-00099-CV, 2025 WL 2723277, at *9 (Tex. App.—Dallas Sept. 24, 2025, no pet. h.) (holding that husband's putting a tracking device on wife's car was sufficient to support a stalking finding); *see also Allen v. State*, 218 S.W.3d 905, 907–08 (Tex. App.—Beaumont 2007, no pet.) (holding that defendant's continuing contact with victim after divorce and issuance of protective

22

orders for domestic violence constituted a scheme or course of conduct under Section 42.072). Therefore, the evidence was legally sufficient to support the trial court's finding.

Challenging the factual sufficiency, S.M. argues that, because one of the voicemails he left for T.M. was in response to a telephone call made from her phone, he could not have known that she would regard his presence or several attempts to contact her as causing any degree of fear, apprehension, or harassment.

However, considering and weighing all the pertinent record evidence, almost all of which was uncontroverted, the evidence supporting the trial court's finding that S.M. committed the offense of stalking was not against the great weight and preponderance of the evidence and so was factually sufficient. *See Gooch*, 902 S.W.2d at 184; *Citizens Nat'l Bank v. Allen Rae Investments, Inc.*, 142 S.W.3d 459, 485 (Tex. App.—Fort Worth 2004, no pet.).

We overrule this issue.

### 5. Attorney's Fees

S.M. next argues that legally and factually insufficient evidence supports the trial court's determination of the amount of attorney's fees awarded to T.M.[14]

---

[14]T.M. argues that S.M.'s issue should be dismissed as insufficiently briefed because the argument does not contain a record reference. *See* Tex. R. App. P. 38.1(i) ("The [argument] must contain . . . appropriate citations to authorities and to the record."). However, we construe briefs liberally and attempt to reach the merits of the dispute whenever reasonably possible. Tex. R. App. P. 38.9; *Horton v. Stovall*, 591 S.W.3d 567, 569 (Tex. 2019). Given that the testimony in question takes up only two pages of

T.M.'s attorney, as an expert on attorney fees, testified that she had been a licensed attorney since 2001, that S.M. stipulated to her qualifications as an expert, that she requested $2,250 in attorney's fees, and that the amount was a reasonable fee for an attorney of her experience and expertise. She also asked the court to award $516 to the district clerk for court costs.

A court may assess reasonable and necessary attorney's fees against a party found to have committed family violence or a party against whom an agreed protective order is rendered as compensation for the services of a private or prosecuting attorney or an attorney employed by the Department of Family and Protective Services. Tex. Fam. Code Ann. § 81.005(a). S.M. does not challenge T.M.'s right to receive attorney's fees, but only the amount awarded.

A party seeking recovery of attorney's fees must meet the framework for determining the lodestar method for determining the reasonableness and necessity of attorney's fees:

> Under the lodestar method, the determination of what constitutes a reasonable attorney's fee involves two steps. First, the [factfinder] must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. The [factfinder] then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. The [factfinder] may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.

---

the reporter's record—with no exhibits—we are able to discern the portion of the record to which S.M. refers.

24

*El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012); see *B.E.K. v. C.E.O.*, No. 02-23-00025-CV, 2024 WL 3195849, at \*7 (Tex. App.—Fort Worth June 27, 2024, pet. denied) (mem. op.).

In this case, the only evidence introduced as to the amount of reasonable and necessary attorney's fees was the testimony of T.M.'s attorney, Marvina Robinson. After testifying that she had been licensed in Texas since 2001, Robinson testified that S.M.'s counsel had stipulated to her qualifications. Robinson further testified:

> We are asking this court for $2,250 in attorney's fees in this matter. That is a reasonable fee for an attorney of my experience and expertise. We are also asking the [trial court] to make an award of court costs in the amount of $516 to the Tarrant County District Clerk for the cost of court and service fees in this matter. And I pass myself."

This comprised the entirety of the evidence as to the amount, reasonableness, and necessity of attorney's fees.

Although contemporaneous billing records are not required, they are strongly encouraged to prove the reasonableness and necessity of requested fees when those elements are contested. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 502 (Tex. 2019). At a minimum, the claimant must prove (1) the particular services performed, (2) who performed them, (3) approximately when they were performed, (4) the reasonable time required to perform them, and (5) the reasonable hourly rate for each person performing them. *Id.* at 498–99. The evidence adduced by T.M. addressed none of these; it therefore did not meet this minimum standard. *See id.; Hizar v. Heflin*, 672 S.W.3d 774, 803–04 (Tex. App.—Dallas 2023, pet. denied).

Because attorney's fees are authorized but the evidence was legally insufficient to support the amount of fees awarded, we reverse the award of attorney's fees and remand this issue to the trial court for a new trial solely on attorney's fees. *See Roohrmoos*, 578 S.W.3d at 506; *Hizar*, 672 S.W.3d at 804.

## IV. CONCLUSION

Having overruled S.M.'s issues challenging the 30-year protective order independent of the attorney's fees award, we affirm that part of the order. But because we have sustained S.M.'s final issue, we reverse and remand to the trial court solely for a new trial on attorney's fees.

/s/ Brian Walker

Brian Walker
Justice

Delivered: March 19, 2026